[No. 18940-2-II.    Division Two.    August 8, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS WHITCOMB SMITH, *Appellant*.

*W. Brent Basden* and *Wolfley Hoffer & Basden, P.S.*, for appellant (appointed counsel for appeal).

*David H. Bruneau, Prosecuting Attorney*, and *Rachel A. Brooks, Deputy*, for respondent.

HOUGHTON, C.J. — Thomas Whitcomb Smith was convicted, after a trial on stipulated facts, of unlawful possession of a controlled substance. He appeals, challenging the validity of the telephonic search warrant. We reverse.

## FACTS

On April 5, 1994, Officer Madison obtained three telephonic search warrants from a superior court judge authorizing the search of Smith, his home, and his car. After the judge issued the telephonic warrants, Madison contacted the communications facility in charge of recording the conversation between the judge and Madison. The dispatcher told Madison that the recording had failed, but that "they could take the recording of that conversation off of that master file." Madison decided that he would not call the judge again or repeat the hearing. The search

warrant was executed on April 5, 1994. A few days later, Madison discovered that the "master recording" had also failed and that there was no record of his conversation with the judge.

Based upon evidence recovered during the search of Smith's house, he was charged with possession of a controlled substance. Smith moved to unseal the search warrant. Because there was no record of the conversation between Madison and the judge, the State attempted to "reconstruct" the telephonic affidavit.

On August 15, 1994, a "reconstruction hearing" was held before another superior court judge. Madison testified that he had made detailed notes of the information pertaining to probable cause before he called the judge. He also testified that because his notes were so detailed, he simply read them verbatim to the judge. These notes were admitted into evidence without objection.

The judge who had authorized the search warrant testified that he did not remember many details from the conversation. He recalled that it was his impression that the officer had been reading from a prepared statement. He also recalled having asked the officer some questions relating to probable cause, but he could not recall either the questions or the officer's answers. Based upon the judge's and Madison's testimony, the "reconstruction" court ruled that Madison's notes were "the best evidence of that reconstructed hearing."

At a subsequent suppression hearing, a third superior court judge ruled that Madison's notes contained enough information to support the first judge's determination that probable cause existed and denied Smith's motion to suppress. Further, the suppression court ruled that the warrant was not overbroad.

## ANALYSIS

### A. Reconstruction

Smith first contends that the warrant is invalid for lack

of a supporting affidavit. CrR 2.3(c) governs the issuance of search warrants and provides in relevant part:

> A search warrant may be issued only if the court determines there is probable cause for the issuance of a warrant. There must be an affidavit, a document as provided in RCW 9A.72.085 or any law amendatory thereto, or sworn testimony establishing the grounds for issuing the warrant. The sworn testimony may be an electronically recorded telephonic statement. The recording or a duplication of the recording shall be a part of the court record and shall be transcribed if requested by a party if there is a challenge to the validity of the warrant or if ordered by the court.

Although the recording of Officer Madison's "telephonic affidavit" failed, the State contends that it successfully "reconstructed" the affidavit through the testimony of Madison and the judge and by introducing Madison's notes into evidence.

The Supreme Court has held that when the tape recording relating to a telephonic search warrant omits testimony:

> Parties may reconstruct sworn telephonic testimony at a later hearing, based on the testimony of witnesses including police officers, only if the reconstruction does not impair the reviewing court's ability to assess what evidence the magistrate considered and found when he determined probable cause existed.

*State v. Myers*, 117 Wn.2d 332, 347, 815 P.2d 761 (1991). But where the recording fails entirely and there is no recorded testimony, reconstruction of an entire sworn statement is permitted "only if detailed and specific evidence of a disinterested person, like the magistrate or court clerk, corroborates the reconstruction." *Myers*, 117 Wn.2d at 343.

In *Myers*, the "reconstruction" was based almost entirely upon the officer's testimony. The officer discovered that the recording had failed the day after the warrant was issued. *Myers*, 117 Wn.2d at 335. Upon learning that

there was no record of his conversation with the magistrate, the officer wrote down what he was able to recall of the conversation. *Myers*, 117 Wn.2d at 335. At the subsequent suppression hearing, the issuing magistrate testified that he had no independent recollection of the conversation. Specifically, he could not recall any of the details that persuaded him that probable cause existed. *Myers*, 117 Wn.2d at 335-36.

The Supreme Court reversed, holding "that the 'reconstruction' of the affidavit offered at the suppression hearing did not safeguard Myers' rights under the Fourth Amendment and Const. art. 1, § 7 because it impaired this court's ability to review the basis of the magistrate's probable cause determination." *Myers*, 117 Wn.2d at 344.

Even assuming Madison's notes were sufficient to establish probable cause, because he is not a "disinterested person," they cannot be used by themselves to reconstruct the affidavit. *Myers*, 117 Wn.2d at 343. The only "disinterested person" to testify was the judge. We must determine whether the judge's testimony provided sufficient corroboration to establish that the information in Madison's notes was what the judge considered in determining that probable cause existed. *Myers*, 117 Wn.2d at 343.

Here, the judge testified more than four months after he issued the disputed warrant. He did not take any notes relating to the disputed warrant, and testified from present memory. He did not recall to which officer he spoke, but he did remember that he placed the officer under oath. The judge also testified that it "appeared" that the officer "was speaking from something that he had already written out . . . ."

The judge related what he could recall of his conversation with the officer: (1) that an informant, whose name the judge did not recall, told the police that Smith was involved in drug activity; (2) that the confidential informant told the police that Smith was going "somewhere near Tacoma" to "participate in some drug transaction"; and (3) that the police followed Smith to Tacoma and

observed him engage in what they believed was a drug transaction. The judge admitted that his recollection of the details was "foggy."

At the "reconstruction hearing," the second "reconstruction" judge concluded that Madison's notes contained all of the information that the issuing judge used to determine that probable cause existed and ruled that Madison's notes constituted the reconstructed affidavit. There is no written order from this hearing in the record. In an oral ruling, the "reconstruction" judge concluded: "This affidavit . . . was read virtually verbatim to Judge Wood and the affidavit itself is the best evidence of that reconstructed hearing." The "affidavit" referred to is actually Madison's notes. This document does not comply with the requirements of RCW 9A.72.085.[1] Accordingly, it does not satisfy CrR 2.3(c).

---

[1]RCW 9A.72.085 provides:

**Unsworn statements, certification.** Whenever, under any law of this state or under any rule, order, or requirement made under the law of this state, any matter in an official proceeding is required or permitted to be supported, evidenced, established, or proved by a person's sworn written statement, declaration, verification, certificate, oath, or affidavit, the matter may with like force and effect be supported, evidenced, established, or proved in the official proceeding by an unsworn written statement, declaration, verification, or certificate, which:

(1) Recites that it is certified or declared by the person to be true under penalty of perjury;

(2) Is subscribed by the person;

(3) States the date and place of its execution; and

(4) States that it is so certified or declared under the laws of the state of Washington.

The certification or declaration may be in substantially the following form:

"I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct":

_____          _____
(Date and Place)                        (Signature)

This section does not apply to writings requiring an acknowledgment, depositions, oaths of office, or oaths required to be taken before a special official other than a notary public.

The "reconstruction" judge erred in ruling that Madison's notes constituted a reconstructed affidavit and that the "reconstruction" was proper. First, Madison's notes are not the kind of "detailed and specific evidence of a disinterested person" required by *Myers*. *Myers*, 117 Wn.2d at 343. Second, although the issuing judge's testimony supports the inference that Madison was reading from a document, it does not establish that the information in Madison's notes was actually presented to the judge.

■ Even assuming that Madison's notes and testimony provide enough information to support a finding of probable cause, *Myers* notes that because police officers are interested and not impartial parties, courts may not rely on their testimony to reconstruct an entire sworn statement. *Myers*, 117 Wn.2d at 343. Without independent evidence from a disinterested person establishing the details upon which the judge determined that probable cause existed, it is impossible to conduct meaningful review.[2] We hold that the reconstructed affidavit is invalid.

## B. Validity

Smith next contends that the warrant was invalid because: (1) it was overbroad; and (2) it omitted material information about an informant's criminal history. Because we hold that the State failed to adequately reconstruct the affidavit and the search warrant is invalid, we do not address this issue.

Reversed.

---

[2] We note that our reversal does not hamper future law enforcement efforts. The more appropriate course of action in these circumstances is for the officer or prosecutor to contact the issuing magistrate, inform him or her that the recording failed, and either: (1) repeat the hearing and record the testimony if the warrant has not yet been served; or (2) where the recording failure is discovered after the warrant is served, ask the magistrate to make notes of what he or she recalls of the conversation. In the latter case, it is assumed that the issuing magistrate will be able to testify in sufficient detail at a CrR 3.6 hearing about what he or she considered in finding that probable cause existed.

ARMSTRONG and HUNT, JJ., concur.